THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* AUGUST BISCHOFF, Appellant, Impleaded with T. AUBREY MacINTOSH, Defendant.

First Department, July 5, 1928.

*Hugo Wintner* of counsel [*Royal H. Weller* and *Robert P. Schur* with him on the brief; *Fox, Weller & Wintner*, attorneys], for the appellant.

*Edwin B. McGuire, Deputy Assistant District Attorney*, of counsel [*Joab H. Banton, District Attorney*], for the respondent.

MARTIN, J.   The defendant was found guilty by the jury after the case had been submitted to it on the second count of an indictment which charged him with grand larceny in the first degree, alleging that he stole $1,500 from the Hartford Accident and Indemnity Company, which sum he held as agent, bailee and trustee of that company.

The appellant Bischoff was indicted with T. Aubrey MacIntosh. On application of the district attorney a severance was granted. Bischoff was tried alone and MacIntosh was a witness for the People.

It is the People's contention that the $1,500 was the property of the Hartford Accident and Indemnity Company; that it was received on April 9, 1924, by the defendant Bischoff as its agent and as part of premiums due from the Niewenhous Construction Company and the Yorkville Bank for three policies of insurance which had been issued by the Hartford Accident and Indemnity Company covering risks of a certain building operation, the Niewenhous Construction Company being the contractor and the Yorkville Bank the owner.

The defendant contends that the $1,500 was not received by him as agent of the Hartford Accident and Indemnity Company, but was to be held by him personally until the work was completed and the full amount of the premiums determined; that the policies

made the premiums due only after the completion of the job and not until an audit should be made sometime within a year after completion; that it was not due to the Hartford Accident and Indemnity Company at the time of the alleged larceny and was not considered by the Niewenhous Construction Company as a payment of premiums nor paid by it for delivery to the Hartford Accident and Indemnity Company, but was delivered to defendant to be held by him pending the final result of a future audit.

Each policy required the insured to exhibit records to the insurance company *at the conclusion* of the work. Thereafter, the insurance company was given a year to make its audit and to fix the amount of premiums due thereon. The insurance company contends that the defendant prevented the audit called for by the contract of insurance.

The policies provided that an estimated or tentative advance premium be paid at the inception of the risk, the balance and probably the much larger part of the premium to be paid after the audit in the manner set forth. If the advance premium proved larger than the total premium eventually found due, a return was to be made by the company to the insured, and the insured would be obliged to pay any unpaid balance found due. Each policy also provided for a stated minimum premium to be retained in any event by the insurance company.

The trial justice, after the imposition of sentence, waiving the formal presentation of the motion, granted the defendant a certificate of reasonable doubt specifying as the reasons therefor the following:

" *First.* The refusal of the Court to dismiss the indictment at the close of the People's case and at the close of the entire case, on motion of the defendant on the ground that there was no corroboration of the testimony of the accomplice, the witness, MacIntosh, no sufficient proof of agency of the defendant, and no sufficient proof as to title to the monies alleged to have been converted by the defendant in the Hartford Accident and Indemnity Company, sufficient in law to sustain the allegations of the indictments.

" *Second.* The charge of the Court to the jury on the question of the sufficiency of the corroboration of the testimony of the accomplice, MacIntosh, and the refusal of the Court to charge as requested on the character, weight and sufficiency of such corroborative testimony, if any.

" *Third.* The charge of the Court to the jury on the issue as to the agency of the defendant Bischoff at the time set forth in the indictment, in and about his receipt and custody of the monies

alleged to have been stolen and the capacity in which he received said monies and the refusal of the Court to charge as requested on these issues. Also the charge of the Court and the refusal of the Court to charge as to the issue of the title to the monies alleged to have been stolen.

"*Fourth.* Whether in law there was sufficient evidence in the case to uphold the verdict of the jury."

It appears that this defendant had a right, under the agreement as well as under the course of dealing between the parties, to take the $1,500 and place it in his bank account. There is also the evidence of Mr. Niewenhous to the effect that he gave the $1,500 to the defendant personally, and not to the insurance company, with the express direction that he would hold defendant personally for it, the amount to be held by defendant until it had been determined what part thereof, if any, was due the insurance company; and that when the sum due had been determined by the audit, defendant was to pay to the insurance company the amount due it, if any, and return the balance to the Niewenhous Company. He also testified that the defendant stated to him that nothing was due because there had been no audit, but that he, Niewenhous, insisted the defendant bill him to the extent of $1,500 which money was to be kept by defendant in accordance with instructions. The receipted bill is significant. It says: "Paid on A/C Pending Audit."

The representative of the Niewenhous Company who paid the money clearly negatived all basis for a charge of larceny. It may be said that he was a friend of the defendant, but the documentary proof, including checks, bill and receipt, sustains his testimony and it is nowhere contradicted.

It is evident that there had been strained relations between the insurance company and defendant. The company had canceled his agency before the receipt of the $1,500, because he refused to place his plate glass insurance with it.

The sole witness upon whose testimony the prosecution depended was a discharged employee of the insurance company who had confessed to wrongdoing covering a period long prior to this transaction. He alone implicated the defendant, but much of his testimony was unreliable. He referred to the payment of money in other transactions indicating that such payments were in the nature of bribes, but on cross-examination many if not all of these transactions were shown to be legitimate business dealings with defendant. Even assuming the truth of the testimony of this witness, there is grave doubt if any material part thereof was corroborated in the slightest degree.

We are also of the opinion that the effect of the charge of the court was that the defendant received and accepted the $1,500 as agent for the insurance company. In view of the charge, however, the court very fairly granted a certificate of reasonable doubt.

The whole transaction, even assuming the truth of the People's testimony, did not constitute a larceny. The parties may have intended to eventually defraud either the insurance company or the contractor, but the proof was insufficient upon which to hold the defendant for the crime of larceny.

The judgment of conviction should be reversed, the indictment dismissed and the defendant discharged.

DOWLING, P. J., FINCH, MCAVOY and PROSKAUER, JJ., concur.

Judgment reversed, indictment dismissed and defendant discharged. Settle order on notice.